The Full Commission has reviewed the prior Opinion and Award based on the record of the proceedings before Deputy Commissioner Stanback and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence or to amend the prior Opinion and Award except for certain modifications. The Full Commission therefore modifies and affirms the Opinion and Award of the Deputy Commissioner.
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing, and in a Pre-Trial Order dated 15 September 1997 as:
 STIPULATIONS
1. All parties hereto are subject to and bound by the provisions of the North Carolina Workers' Compensation Act, and Young-Hinkle Corporation, the employer, is self insured.
2. The plaintiff employee sustained an injury by accident arising out of and in the course of employment with Young-Hinkle Corporation on November 17, 1989.
3. The actual average weekly wage of the plaintiff at the time of the injury, including overtime and all allowances, was $327.67, yielding a compensation rate of $218.46 per week.
***********
 RULINGS ON EVIDENTIARY MATTERS
The objections contained within the depositions of Dr. Kuzma and Dr. DeFranzo are OVERRULED.
Plaintiff's motion for attorney's fees is DENIED.
Defendant's motion for reconsideration of the Deputy Commissioner's Order of October 17, 1997 not allowing Dr. Naso's March 3, 1992 medical report into evidence is DENIED.
***********
All objections and rulings on evidentiary matters are ruled upon consistent with the findings of fact and conclusions of law and, based upon all of the competent evidence in the record, the Full Commission makes the following:
 FINDINGS OF FACT
1. In April 1989 defendant hired plaintiff to work as an assembler at its Lexington, North Carolina furniture plant. Plaintiff's duties required that she use her dominant right hand to operate a pneumatic staple gun or air tool for eight hours a day, five days a week. She used her second and third fingers on her right hand to pull the gun's trigger. By November 1989 plaintiff developed weakness, numbness, pain and tingling in her right hand, running up her forearm, which woke her at night with significant pain and cramping. She also developed an inability to straighten her third or ring finger.
2. Defendant's choice of physicians, Dr. Ash Uppin of Lexington, evaluated plaintiff. Plaintiff complained to him of a five to six month history of persistent pain in her right ring finger radiating to the palm of her right hand and up her right forearm. Dr. Uppin recorded a history of bilateral carpal tunnel syndrome and diagnosed tenosynovitis.
3. On 19 December 1989 at Lexington Memorial Hospital, Dr. Uppin operated on plaintiff's right hand. He excised the palm below her right ring finger, exposing the flexor tendon, and removed scar tissue located in an area two inches proximally as well as distally along the flexor tendon located in the palm. Defendant did not pay plaintiff disability compensation for any period of missed work related to this surgery.
4. Dr. Uppin's 19 December 1989 surgery failed to improve plaintiff's symptoms and actually resulted in worse right hand pain, weakness and swelling. Defendant then referred plaintiff to its choice of physician, Dr. Stephen J. Naso of Charlotte. Dr. Naso first saw plaintiff on 6 February 1990; he recommended additional surgery. He diagnosed "recurrent trigger finger, right palm with severe tenosynovitis".
5. Dr. Naso performed a radical tenosynovectomy of plaintiff's right hand on 14 February 1990. During this surgery, Dr. Naso found severe tenosynovitis involving the flexor mechanism of the long (second) finger and a large amount of hypertrophic synovial tissue and scar tissue that engulfed the entire flexor mechanism of the long (second) finger. The neurovascular bundles were also involved.
6. Plaintiff was referred to physical therapy and remained out of work in February and March 1990. On 10 April 1990 Dr. Naso released plaintiff to light duty work. By 11 May 1990 plaintiff still had a thirty degree lag of her long finger, and plaintiff was unable to use a screwdriver and a staple gun. On 12 June 1990, Dr. Naso rated plaintiff with a permanent partial disability of twenty-five percent (25%). He did not specifically state the body part.
7. On 3 August 1990 defendant executed a Form 21 Agreement, wherein the parties stipulated that on 17 November 1989 plaintiff sustained a "fractured finger." On 3 August 1990 defendant executed a Form 26 Agreement, wherein the parties stipulated that plaintiff was entitled to compensation for a twenty-five percent (25%) loss to her "second finger." Defendant paid plaintiff $1,903.73 in temporary total disability benefits for the period 7 February 1990 through 8 April 1990, and $2,184.60 in permanent partial disability benefits (ten weeks) for a twenty-five percent (25%) loss to her second finger.
8. On 14 December 1990 Dr. Marks examined plaintiff's right hand and opined that she had a twenty-five percent (25%) permanent disability. He did not specifically state of what part of her body.
9. Following her surgeries, plaintiff continued to suffer from pain, weakness and loss of motion in all of her fingers, as well as swelling, pain, weakness and loss of motion in her right hand. She had a loss of feeling or sensation in her fingers and the palm of her hand and a large lump in her right palm from the surgeries.
10. In December 1991 plaintiff's counsel requested Dr. Naso to see plaintiff for an evaluation and rating to the right hand. On 30 January 1992 defense counsel "Reviewed letter from Dr. Naso," according to defense counsel's Affidavit filed herein. On 27 February 1992, four days prior to the patient's 3 March 1992 scheduled appointment, someone from defense counsel's office had a twenty-five minute conversation with Dr. Naso or his office, without plaintiff's knowledge or consent.
11. On 21 October 1992 defense counsel gave notice of a scheduled ex parte meeting with Dr. Naso. On 23 October 1992 plaintiff moved the Deputy who originally heard the claim to preclude defense counsel's meeting ex parte with Dr. Naso prior to his 4 November 1992 deposition testimony, and on 2 November 1992 said Deputy denied plaintiff's motion.
12. On 15 January 1993 the Deputy entered an Opinion and Award against plaintiff, including an award against plaintiff's counsel personally for attorney's fees. Plaintiff's appeal to the Full Commission was unsuccessful; however, the Court of Appeals subsequently remanded the case to the Full Commission to consider plaintiff's claim for additional compensation with an instruction to strike the 4 November 1992 deposition testimony of Dr. Stephen Naso, based on ex parte communications with the defense. The Supreme Court denied defendant's petition for discretionary review.
13. Dr. Anthony DeFranzo, a board-certified plastic surgeon with a certificate of added qualifications for hand surgery, devotes about thirty-five to forty percent of his practice to surgery of the hand. He initially evaluated plaintiff's hand on 26 August 1997, and he also referred plaintiff to an occupational therapist for further evaluation to plaintiff's fingers and hand. The therapist found significant loss of motion in all of plaintiff's fingers, along with significant loss of grip strength in the hand — about fifty percent of normal. Plaintiff also demonstrated diminished sensation throughout all of her fingers and in the palm of her right hand. After the examinations Dr. DeFranzo assigned plaintiff a thirty percent (30%) permanent disability to her right hand based on her continued symptoms and problems associated with mild carpal tunnel syndrome and due to her loss of range of motion in her index, long, ring and small fingers. Plaintiff's permanent partial disability to her right hand was caused by her work duties at Young-Hinkle, and by the two resulting surgeries in the hand and the wrist. Under the circumstances of this case, Dr. DeFranzo's evaluation of plaintiff's hand is hereby approved by the Full Commission and defendant is directed to pay for it as it was reasonably necessary.
14. Dr. DeFranzo further explained the nature of plaintiff's condition in his deposition testimony wherein he discussed plaintiff's tenosynovitis, probable carpal tunnel syndrome, disability, and lack of range of motion in all four of her fingers and in her hand. Since the tendons of all the fingers lie right next to each other in the palm at the carpal tunnel; plaintiff's scarring of the tendons and tendon sheaths of one or more fingers affects the tendons of all fingers, because the tendons are all so close together. The two surgeries to plaintiff's right palm also inflamed her carpal tunnel. Plaintiff's complaints of pain, numbness, tingling and weakness in her right hand since 1989 were caused by her tenosynovitis and by the surgeries to treat her tenosynovitis. Plaintiff's loss of range of motion in her fingers, as well as her loss of both sensation and grip strength in her right hand, are due to her tenosynovitis in her fingers and by the two surgeries performed by Drs. Uppin and Dr. Naso.
15. Dr. DeFranzo opined, and the Full Commission finds as a fact, that the previous twenty-five percent (25%) permanent partial disability rating to the right long finger would be equivalent to a five percent (5%) impairment of the hand. Therefore, subtracting the previous rating, plaintiff's additional permanent impairment resulting from her tenosynovitis would be twenty-five percent (25%) of her total right hand.
16. On 22 January 1998 Greensboro hand specialist Dr. Gary Kuzma evaluated plaintiff at defendant's request. Upon physical examination and therapist testing, Dr. Kuzma found that plaintiff had a positive Phalen's and reverse Phalen's test and positive carpal canal and forearm compression tests, and found significant grip strength loss and sensory loss over the dorsal hand, thumb and long, ring and little fingers. Dr. Kuzma assigned plaintiff a more conservative permanent partial disability rating of fifteen percent (15%) of her hand, based on the carpal tunnel release, stenosing tenosynovitis release of her hand and loss of strength.
17. The Full Commission gives greater weight to the expert opinion rendered by Dr. Anthony DeFranzo with regard to plaintiff's permanent partial disability of her right hand and the cause thereof.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. As a result of her compensable injury on 17 November 1989, plaintiff has a thirty percent permanent partial disability of her right hand. Since she has previously received compensation for five percent of this thirty percent, she is entitled to compensation at the rate of $218.46 per week, for a period of fifty weeks for the uncompensated 25%. N.C. Gen. Stat. §97-31(23).
2. Defendant did not defend the hearing without a reasonable basis and therefore, plaintiff's attorney is not entitled to attorney fees. N.C. Gen. Stat. § 97-88.1.
3. Dr. DeFranzo is approved as plaintiff's treating physician. Plaintiff is entitled to further medical treatment as recommended by him. Defendant shall pay for his examination and deposition. N.C. Gen. Stat. § 97-25.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. For her uncompensated twenty-five percent (25%) permanent partial disability of the right hand, defendant shall pay permanent partial disability compensation to plaintiff at the rate of $218.46 per week for a period of fifty weeks. Said amount shall be paid to plaintiff in a lump sum, subject to the attorney fee approved in Paragraph 3. Interest on such amount at the rate of 8 percent per year shall by paid from 29 September 1992, the date of the first hearing concerning additional compensation, until paid. All the interest shall be paid to plaintiff.
2. Defendant shall pay all medical expenses incurred by plaintiff as a result of her occupational disease and compensable injury of 17 November 1989 when bills for the same shall have been submitted pursuant to approved Industrial Commission procedure.
3. A reasonable attorney fee of twenty-five percent of the compensation due plaintiff under Paragraph 1 of this AWARD is approved for plaintiff's counsel and shall be deducted from those sums and paid directly to plaintiff's attorney.
4. Defendant shall pay the costs, including the costs of all depositions taken and including $450.00 to Dr. DeFranzo as an expert witness fee.
This 2nd day of June 1999.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/____________________ LAURA K. MAVRETIC COMMISSIONER
S/____________________ DIANNE C. SELLERS COMMISSIONER